Mr. Baker, you may proceed. Thank you. Good morning, and may it please the Court, my name is James Baker. I'm appearing this morning on behalf of Mary Davis. The case that brings us to this Court arises out of a provision of the Illinois School Code which provides that tenured public school teachers cannot be terminated absent clause. It provides certain due process rights, which includes a teacher being given charges for the basis of the proposed discharge and an opportunity for a hearing to contest the discharge. In this case, Ms. Davis was charged by the Peoria School District with six separate types of misconduct. Four of those contained allegations of... Which charging instrument are you referring to? Beg your pardon? Which charging instrument are you referring to? Actually, I'm taking both of the charges together. Because there were seven and the first was withdrawn. Correct. So your remarks include the guilty plea. That's right, that's correct. After a two-day hearing, the hearing officer concluded that the board did not prove that there was cause for discharge and directed that Ms. Davis be reinstated. And in this appeal, this Court is being asked to review that decision. I would like to, before talking about any of the specific charges, make several points generally. The first is that in a discharge case, it's the district that bears the burden of proof by preponderance of the evidence that there is cause for discharge. The second is that in this appeal, whether we use the manifest way to the evidence standard or the colloquial erroneous standard, the review of the hearing officer's decision is deferential. We believe that the Court cannot substitute its judgment for that of the hearing officer. The third point is that three of the charges involve allegations of theft. And in this case in particular, the theft allegations in the administrative and hearing officer's resolution of those allegations involved resolving conflicting evidence. And the hearing officer made credibility determinations. And we believe that what he did was inherently within the province of the fact finder and should not be reviewed or reversed based upon that. When the hearing officer made credibility determinations, did he factor in the fact that she was convicted of providing false information to the police? He discussed that particular determination. Did he discuss it with respect to her credibility? No, he did not. I intend at a later point in my argument to address that particular issue. If the Court would prefer, I can do it now. No, you said that the hearing officer resolved issues of credibility. Well, it seems like it's pretty hard to find somebody credible who's been convicted of providing false information in a criminal investigation. So I just wondered if he factored that in. When evaluating for credibility, no need to shift your focus. In his opinion, he does not discuss that. All right. If you ask with regard to the hearing officer's statement about the guilty plea and about whether or not there was intent, right? Intent to commit a theft. That's correct. But when you plead guilty, you plead guilty to all the elements of the offense, don't you? You plead guilty to the elements of the offense for which you were charged. Correct. Which basically was obstruction of intent to obstruct justice. And in this case, it's important to note that particular charge was not part of the original charges. It was a charge that was designed to enable a resolution of all the criminal charges. In other words, it was a guilty plea for misdemeanor in exchange for the dismissal of 16 felony charges. Ms. Davis was adamant in the plea negotiations, and it's undisputed, that she would not plead guilty to anything that involved theft. Because she'd lose her pension. Well, for whatever reason. I'm not sure that it was necessarily because she would lose her pension. There were a lot of reasons. That's what the record says. The record says that her brother told her the practical realities of the criminal justice system. Losing her pension was a factor. But the whole point here was... She certainly knew that if she pled guilty to a criminal charge, that occurred or was committed while she was employed by the district. And it was. The accusations focused on 2009 statements she made while serving as chief academic officer. She certainly knew that a conviction for criminal conduct that occurred while employed by the district was grounds for dismissal with cause. She knew that could be a basis for dismissal with cause. And she pled guilty. She pled guilty to the fact that she provided inconsistent information to a police officer in two interviews. With the purpose of obstructing her own prosecution. That's correct. And the question is, if she pled guilty to that, is that standing by itself grounds for her termination? Illinois courts, as we pointed out in our brief, recognize that Ms. Davis is bound by that admission. And that that admission could, in certain circumstances, be a basis for a discharge. But Illinois courts have tended to look at the plea within the context of a lot of other factors. That's the six-factor test. They have looked at the conduct that resulted in a criminal conviction to see if it was related to that person's duties as a teacher. But here the conduct of 2009 was designed to impair the investigation of her actions in spending school funds. So the nexus is there. I don't believe it is.  Number one, if one looks at the context, the plea was made to resolve a criminal proceeding. It was not the product of an investigation that led to a charge. Number two, in order to enter the plea, Ms. Davis had to waive the statute of limitations defense. Number three, the evidence in this case is that notwithstanding the contradiction in what she told the police officers, she was fully cooperative during the course of the investigation. She met with the investigator within an hour of being requested on two separate occasions. She waived her Miranda rights. She agreed to submit to a polygraph test. Did she submit to one? She did not. But she was asked if she would, and she said yes. Now, our position is... On this point, though, she made a judicial admission that she lied to the police. That's correct. Okay. And when the justice talked about the nexus, she lied to the police about how funds were used to purchase a ballpoint pen. No. You know, in part. Isn't that right? No, she didn't. Did she use district funds? The specific factual basis of her plea appears at pages A18 and A19 of the appendix of the defendant's brief. And the assistant state's attorney was asked to offer the evidence that would be the basis for... The pages are right there. It's pages A18 and A19 of the district's brief. It's the transcript of the negotiated plea agreement. And essentially it is that when she was interviewed in June of 2009, she denied having used Lindbergh School funds for any personal reasons. And later, in August of 2009, she punished information which was in contradiction to the original statement she made to the detective. Now, what that means is she gave conflicting statements. But that's not tantamount to an admission that she stole a pen. I agree. It's only tantamount to an admission that she gave untruthful information to the investigator looking into her criminal misconduct. And people don't normally lie about lawful behavior. It is a nice thing to hear whether or not the hearing officer could look at this and make his findings, and then we would have to find that his findings are against the manifest weight of the evidence. Either against the manifest weight of the evidence or clearly erroneous. And in this case, you may disagree with the conclusion reached by the hearing officer. That certainly is an open question for debate. We can see that. But the point is, it was his shot to call. And the question is not whether a reviewing court, having considered the evidence, would have looked at it otherwise. But instead, whether given all the circumstances, there was enough in the record to support the decision. And we believe, under Illinois case law, what Mr. Fitzgerald did was not clearly erroneous. He looked at it for what it was, a negotiated plea. And under the cases that we have cited, in determining whether a nexus exists, you don't look at the conduct standing alone or the police standing alone, but instead the context in which it occurred. And I think that saying what you will about Ms. Davis and her behavior, there's absolutely no evidence in this record suggesting that whatever she did was likely to reoccur. As to the allegation of theft, as to the mock-bonk panel. Would she ever be given the opportunity to do it again? I can't answer that. I mean, if she's reinstated to her position with the district, presumably she would be put in a position where she may have that opportunity. So your remark is addressed towards whether this was remedial, remediable, excuse me, or not? We don't take the position that remediation becomes an issue with allegations of criminal misconduct. Performance-based issues and larger performance-based issues, which we believe remediation becomes an issue and no remediation occurred. Our position simply is as to the criminal plea, you cannot look at that in a vacuum, but in determining whether there is a nexus between her suitability to teach, one has to look at all the surrounding circumstances. I think I can accept your argument were this negotiations that were civil in nature and didn't result in a guilty plea. What she did in order to get the felony cases dismissed, great. Whatever she said or did, maybe the hearing officer could ignore. But once she enters a guilty plea, I don't think there's any support in the case law for the hearing officer to ignore the legal impact of that guilty plea. I don't think he ignored the legal impact of the guilty plea. He explained it away by saying, well, her brother, who was an out-of-town attorney, told her, you know, you might end up with a felony. What he said was, and I think his paraphrase. The hearing officer explained it away, I believe. I think that was his shot to call. Had you been sitting in his position, you might have disagreed with it. I don't doubt that, and that's your problem. You think as a matter of law, somebody who is charged with evaluating evidence can ignore the impact of a guilty plea? No. We're not saying. Teach people with guilty pleas, and they will come into court and say, no, I only pled guilty because my lawyer told me to do it. We're not asking. We never ask Mr. Fitzgerald to ignore the guilty plea. We ask him to apply Illinois law. Okay, tell me the case. The McCaul case, the Payne case, which are two of the cases cited in our brief, and they both speak to the point that you look at the guilty plea and other circumstances. For example, in the Payne case, I think it involved a drug possession charge, and the teacher, after he entered the plea, engaged in similar misconduct later. There was one case, and I think it's the McCaul case, involving tax evasion. Those were things they did in their personal life. Beg your pardon? Those were things they did in their personal life, not as part of their job. There is no case that I have found that differentiates that. Okay, so you don't think she was required to give truthful information to police regarding the execution of her job duties? I do believe she had that obligation, and we've never said that she didn't, but that's not the issue. If that was the issue, then there would be a per se rule which says, if you plead guilty, you're going to be discharged, and that's not Illinois law. Okay, all right. You have to look at the circumstances. Okay, I understand your point. All right. Before I go on, does the court have any other questions for me before I jump into new territory? I think so. The other two criminal allegations involve theft charges, one related to paying a custodian out-of-activity fund money for moving a refrigerator. In that situation, Mr. Fitzgerald said he discredited what the janitor said. There was a lot of inconsistencies in his testimony. He accepted testimony of both Ms. Davis and her partner, who explained the circumstances. The other factor, I think, is, and he didn't mention this in his decision, each check written to that custodian from the activity fund, and I believe there were two or three, could be verified and documented that it was for a school-related purpose. And at the time he was alleged to have moved the refrigerator, there's no check from the activity fund proximate at that time written. The last allegation involves making some payments to a school secretary. That, again, involved a credibility determination. The hearing officer accepted Ms. Davis' version of the incident, and I think there's abundant evidence to support his acceptance of that. The most prominent one is there was no reason for Ms. Davis to give money improperly to someone that she had no relationship with, unrelated to work. I think I have probably gone over my time. If the court has no questions, I'll sit down. I have a question that popped into my brain as I was reading the statutes. Ms. Davis really hasn't taught since 1998. Does she have a current teaching certificate? Yes. Was she required to give up tenure when she accepted the position of dean of students or when she became the principal or when she became the chief academic officer? No. The school code is specific that when a teacher moves from a tenured position to an appointed position, you have no guarantee of retention in the appointed position, but you do retain your tenure rights. Which is why I asked if she still has a teaching certificate. But there was a decision issued out of this court in 1987 written by Justice Stauder, and in that case the person, as part of their contract, gave up their tenure rights. And there's nothing in any of her contracts with the district that required her to give up her tenure rights. I can say this. There is nothing in the record that speaks to that point. That's not necessarily my question. You're just not familiar with her contracts? And it would be unfair for me to say something that I'm not sure about. Okay. Thank you. Thank you, Mr. Baker. Mr. Eisenhammer? May it please the court. I'm Stanley Eisenhammer, and I represent the Board of Education of Peoria School District. It's undisputed that Mary Davis used district funds designated for a seventh-grade field trip to buy herself a nearly $500 patent. No, it is disputed. No. She disputed that. She bought? She disputed it. She said that. She said the seventh-grade field trip was over. I did write down that it came out of the seventh-grade field trip funds. But that couldn't be true because the trip was over. So I think it came out of... No, it came out... And she disputed it. No, she agrees in the record that it came out of that designated fund. Yes, the field trip was over, but it was funds designated for that trip. Okay. It wasn't transfer. She kept... I think she testified she kept careful records and things were put in separate funds for her student activities. If you look at the record, I think she gave two different versions, but I could be wrong. I'll look at it. And it's also... Well, I want to address the guilty plea. The hearing officers' decision on the guilty plea was legally wrong. The cases cited by Mary Davis's attorney all say that the guilty plea and the annoying facts stand as judicial admissions that cannot be collaterally attacked. The hearing officer just threw it out on the basis of... Well, he threw it out. Didn't he say that I'm going to consider it and I'm going to consider this... I'm going to consider it and not consider it because it's just a procedural device that everybody does. And what Payne and McCullough say, it is not a procedural device. It cannot be collaterally attacked. The admissions that are made is part of the guilty plea. I see this guilty plea, and I look at the other circumstances that led to it, and based on everything that happened, I don't think that standing alone is sufficient to warrant dismissal. Every school district, you have DUIs, you have domestic barriers, you have all these things. So what you're saying is if there is a conviction, then you can't look at any other circumstances. No. I'm saying two things. One, it stands on its own, and it also stands as evidence that she committed theft because of what she admitted during the guilty plea. Does it matter whether she committed theft or she committed the misdemeanor offense of obstructing justice because she was put on notice a year before the hearing occurred in 2013 that her dismissal based on the amended charges included her guilty plea? No, I don't think it matters. It's just two independent grounds. They are, in a sense, two independent grounds. The hearing officer also finds as another prong for ignoring the guilty plea is that it was going to be retroactively applied. Right. Which makes, to me, no sense. Because if someone commits a crime or a teacher does something that's wrong, whatever, and later, before a hearing, admits it, that admission is relevant to whatever the act that was done. Doesn't the statute provide that the dismissal is not final until the hearing officer renders a decision when the tenured teacher asks for a hearing? So, although she got notice in 2010 and an amended notice in 2012, she wasn't dismissed until the hearing officer's decision in 2013. Right. Under the statute, she's not dismissed until the hearing officer either rules one way or the other. She's technically suspended, in this case, suspended without pay. But in this case, both the guilty plea, but the underlying admissions, also constituted evidence of theft of the pen. Because she, in the guilty plea, she first stated to the detective that she had never used district funds for personal use. She then, in the second interview, which was the one that was contradictory, which there was evidence in the record about, she admitted that she bought the pen for personal reasons and reimbursed the district. So by saying that was a lie, she's admitting that, in a sense, she used district funds to purchase the pen for personal use, not reimbursement, which is a theft. Which I want to emphasize that the theft that occurred in this case is not technically the purchase of the pen, it's the misuse of school funds. That's when the theft occurred. The misuse of the funds specific to this pen? Right. Or the student activity funds for a personal purchase. For whatever reason, that was not an appropriate use for it. So the district funds were misappropriated as the offense. It doesn't matter that she went out and bought a pen for herself. She could have bought something else. And it doesn't matter that she may have used it in the course of her duties. It's the misappropriation of the money to buy this extravagant pen that's the offense. It's sort of like the Dixon treasurer misappropriating $53 million and buying horses for it. It's the misappropriation of the fund that is the crime, not the fact that she bought horses with it. I think the expenditure of this amount of money for a pen is ill-advised at best. That being said, whether she used this pen or not for a school purpose, what is the written rule or what is the rule on using activity funds? Can you buy a file folder, pens, glue? What is the standard? The standard is the student monies. There's district monies and students' monies that are put in there. They're supposed to be used for student activities. They're designed for student activities period and for the school purposes and for particular activities. They can't be used for personal. I understand, but if it's for an activity and something is purchased, but it's in the nature of an office product, what is the rule? You can't buy anything. I want to know what their rules say. I know the purpose of them. I have three school-age children. I've got a lot of checks for activity funds and different activities, but I know that they have to be executed, that money can't go somewhere and not somebody actually have the paperwork to check the students off. So what is the rule then for the school district that they give to employees to say, these are things you can purchase for an activity, but how do you get the paperwork end of that done? Are they supposed to use their own? Are they supposed to buy? The anecdotal evidence I know is that sometimes the FCCLA club, Future Homemakers, they'll have their own items. Right, and they're in the student activity fund. But they have their own office products and they're stored somewhere. So what is the rule? Well, this is a junior high, so it usually isn't in the office. It's usually used for activities. So it's not like they have separate pens and typewriters and computers. It's usually for seventh grade trips and used for the school because some of the district monies go in there. But it's not used to buy personal purchases for the employee. And this was a personal purchase. This wasn't meant to be used in the school, for the school. It was taken out of funds that were designated for a particular purpose. And used for a different purpose, which was personal. And even though it might have been at the school, since it was misappropriated, it doesn't matter that it was. There is one case, a theft case, where the court says it doesn't matter that you, if you stole a meaningless, very low-value watercolor and replace it with a Monet, it's still a theft. Absolutely. That's what I'm saying. Where do they get the paper to advertise the school trip? Is that from the school, or does that belong to the activity fund? Do they have their own process problem? Do they have their own? And what is the rule, then, about that? Because we know schools like their rules. I think one of the problems here is they didn't have a good enough accounting system to watch what was going on. I think it has to do with the hearing officer's decision. I think the district dropped the ball on this one because Ms. Davis said she left the pen in the desk. And the district didn't provide any testimony indicating it wasn't there when the new principal took over. Davis gave a plausible reason that the hearing officer bought it. Okay. That it wasn't a theft. I used the pen for three years and I left it there. The lady in Dixon didn't say I rode the horse for five years and I left it. Okay, but if she did, it still would be a theft, right? If she had that big van that she might have used. We do have to give some deference to the hearing officer. But that was also a legal mistake. It was irrelevant what happened with that pen because the theft was the issue, not the fact that I gave it back. And even if it was, it was a $500 pen that she put in a desk. Part of the courts of verbal theft that abandoning, you know, it's permanently taking, but abandonment meant to take it away is also considered permanent deprivation. And the best way I know, this is a ballpoint pen, even though it's $500, is to leave it in the desk with probably other ballpoint pens and not tell, and her testimony was she didn't tell anybody about the pen. She didn't tell anybody about, you know, the detective about the pen. The best way to lose a pen is to put it in a desk with other ballpoint pens because we don't have non-block experts running around the school saying, oh, this is a special pen. I should leave it in this drawer. Counsel has two minutes. Let me ask a question with regard to McBroom, McCullough, and Payne. You've got McBroom where they found a suspicion clause to warrant discharge because of the underlying criminal aggravating factors, correct? Correct. However, in McCullough and Payne, looking at the context of what happened, they said it wasn't enough. So your opponent is arguing this whole thing about the guilty plea has to be placed in context. And the context that he's arguing in his brief and so forth in part is that there were all these surrounding circumstances as a variety of rationales before entering the guilty plea. You've got the brother you want to get it over with. You've got the fact that the defendant was very cooperative with the authorities, meeting with them, allegedly waiving certain rights, doing all these things, and that's what they put in context, correct? Correct. Okay. And so then the issue is, in part here, is are those contexts enough to say that you wouldn't be able to, given the deference we're supposed to show hearing officers, you can't overcome the deference you'd give to the hearing officer because the hearing officer had the opportunity to look at, in context, all these other rationales. You know, she could have entered as an offense. I mean, there's a number of things. I probably haven't enumerated everything, but you know what I'm talking about. And you are, correct? So do those contextual matters trump your argument that, look, here in this guilty plea, it was Tatamanta saying, I've committed a theft with regard to the school district, and that would not be a contextual justification to ignore. No. The short answer is no. Because, first off, unlike those cases that happened off school grounds and were related, but the nexus was there were role models. This happened directly to the school, damaged the school, damaged the school's reputation. You know, the kids were deprived of that money, and the school's reputation was injured. On top of that, to say that she cooperated with the police, it takes a spot. She cooperated with the police and then admitted she lied about it. She says, I cooperated, I vouched to take a lie detector test, but I didn't. I don't know how that could be mitigating factors. My understanding was that they never followed through. I think the fact that she refused to take it later on, to take the lie detector test. But the biggest thing is, I cooperated with the police by lying to them, which she admits. Does it matter whether she's a convicted thief or a convicted liar? Because the amended notice of charges said, we're dismissing you for immoral conduct. Right. So... I don't think it matters. Did the district have to prove all six of the allegations, or was one sufficient? I think one is sufficient, because... I'll go back to answering your question, because it goes on. I think one is sufficient. Any of those, in and of itself, is sufficient to be irremediable. One directly injures the students, or, as in pain, they are a role model, and you don't want, this is your second in command, in a sense, lying, admitting she's lying, entering a guilty plea for obstruction of justice, or theft. Either one is sufficient by the cases to warrant dismissal. The mitigating factors go on. These are some of the mitigating factors. I don't think you can trust this employee to come back and live a clean life. Doesn't she provide instruction, develop relationships with teachers and students? Yes. And how can you do that if you have been convicted of an offense involving dishonesty? I don't see how, and that's why we're here. It doesn't, nor, I think, just on that, when it's... She gave false information about her DUI arrest, off school property, and says I wasn't drinking. That's one thing. She gave false information about how she spent the funds. And I don't know whether the first statement in June was truthful, or the second statement in August was truthful, or whether both were not truthful. She admits one of those two statements, if not both, were not truthful. Right, and that should be enough to dismiss her right there. I think they're arguing, well, I made a mistake. Based on everything in the whole, I'm never going to do it again. But that doesn't weigh from the very beginning of this case, when she was first challenged, to her lying about it, there kept coming different stories during her testimony, where with the police, when the school district attorneys questioned her, she says, I don't remember what I said. Then when she testifies, it's clear. And then when she testifies in court on her guilty plea, she admits that she was lying, and now is coming back and really saying, well, I lied to the court, not because the case was easy, because what her brother said and what they put in their brief, I lied in order to avoid a conviction of a felony and to save my pension. It's both in the testimony and in Mary Davis's brief. So putting all those factors together to Justice Carter's question, the answer is it shouldn't mitigate. It's enough, there's enough there, and there isn't any mitigation factors even to attempt to mitigate. She is a, in the end, she is a convicted liar, and an admitted thief, based on what she said to the police. And we can't have someone like that in the schools, in the classrooms. The statute says she's supposed to be returned to her past position. We can't have her being in second command. We can't even have her in a position of the lowest paid teacher in the district. Let me ask you a question based on the timing of the amended charges. The charges that she was served with on June 7, 2010, the hearing officer, let's assume for the sake of argument, we give deferential review to his findings. We find that those would not have been sufficient. But we find the added charge in 12, the guilty plea was a sufficient basis to dismiss. Would she be entitled to wages from June 10th of 2010 until the 2012 date? I don't think so. Why not? The basis for the dismissal did not arise based on the evidence until the 2012 guilty plea. I'll accept your answer if you don't, if it's just I don't think so, if there's anything else you'd like to add. I don't think so, based on the fact that it incorporates into the original and I think there are no cases that deal exactly with this situation. But I think it would be incorporated back. And for the other reason, which I guess goes against your hypothesis, the theft should be a sufficient grounds to do it because it was a theft. And I'll give you one more reason. Her attorney hasn't argued that. Hasn't argued that there's a compromise split, the baby position here, that she would be entitled to the back wages for those two years. With regard to another matter, you appear to suggest that when you're looking at Payne, McCullough, and McBroom, you know, cases that your opponent relies on. We rely on them. I think they're better for us. You appear to make some suggestion. It depends on if the wrongdoing, alleged wrongdoing, was connected with something directly with the school district or versus personal. Yet in those cases, in the one case because of an additional charge of possession of drugs, that was a finding of a likelihood of recurrence and then a termination. In the other case, it was the aggravating factors and the criminal conduct that had nothing to do with the school, but that was sufficient to warrant discharge. And then in McCullough, they looked in the surrounding circumstances and they didn't find sufficient grounds. But the legal point is that in all those cases, from your opponent's standpoint, it's all contextual. And that you can't have just the theft. You have to look at the circumstances. Now, then they attempt to say the circumstances are these other factors. And, you know, one, I think it was arguably speculative that the state's attorney in Peoria wouldn't have dismissed that many charges on this kind. It was a clean case. It was a real good case. You know, it was unusual for the state's attorney to dismiss all these felonies and go with this misdemeanor. That's what it's speculated on in Peoria. And a collateral attack on the judgment. Because he's basically saying, I pled guilty, but the case wasn't really good. And that's really a collateral attack that the courts have said, no, you can't do. And maybe I missed something. No, I guess, you know, if the factors that they suggest that we should look at to put it in context, to look at all the surrounding circumstances, are those enumerated facts and circumstances sufficient under the case law to say that this is in context and surrounding circumstances would not justify a discharge? I mean, they enumerate a number of those things in their brief, correct? Well, they only rely on one. They only rely on one of them. I think this was enumerated in Payne. I can't remember which one. And they have six factors. The plaintiff, I guess they're not the plaintiff, but Mary Davis relies only on one. The chances of reoccurrence. The others she concedes on. And there is what I'm saying is based on the whole, her conduct all through that, including what she's written in the briefs, the fact that this could have, we can't take a chance that it could occur again. And I agree with you that, you know, just because you plead guilty to a, you know, it could be a misdemeanor on something doesn't mean that a tenure teacher should lose their job. It depends on what that is. And in this case, it was theft. And what I was saying, I didn't mean to say that it draws some distinction between out of school and in school conduct. I was just saying that when it happens in school, it is even more egregious. I mean, if she was caught shoplifting at a 5 and 10 cent store, if they're still around, maybe that's certainly different than when she's stealing from the school. It may still mean that she might be, I don't know what will happen, but it seems to me stealing from the school is different than stealing from a drug store. Time's up, gentlemen. Thank you, Mr. Eisenhower. Mr. Baker. Thank you. I really just have one point to make, and perhaps I'm repeating myself, but at the risk of doing that, I would like to make this comment. Under the school code, in a discharge case, the parties designate a hearing officer to receive evidence and to make a decision. And Mr. Eisenhower's comments concerning the moral outrage of what Ms. Davis did is a great closing argument to a jury. It's a great argument to make to a finder of fact. But in this case, we have a differential standard, and the question is, is Mr. Fitzgerald, with respect to the theft issue and with respect to the criminal plea, clearly wrong in saying neither was a cause for discharge? That was his shot to call. He was calling the balls and strikes, and that's his province. And in this case, there is sufficient evidence concerning the criminal plea to say, even though it's an admission that she lied to a police officer, about giving conflicting statements relating to the activity fund. There is nothing relating to the mop mop pen. There is no admission of theft. The record is clear that Ms. Davis, confronting 16 felony charges, refused to plead to anything that might constitute an allegation of theft. And the hearing officer basically said, that is not enough to justify her termination. And his decision is supported by Illinois case law, which says you look at the criminal plea, the admission, and surrounding circumstances. And while another finder of fact may say, well, those surrounding circumstances are not enough to overcome a discharge decision, the fact that an opposite conclusion can be reached is not clearly wrong. And it's our position that Mr. Fitzgerald's decision was supported by sufficient evidence, and it must stand. If there are no further questions, I thank the court for its attention. Thank you, Mr. Baker. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. Right now, it will stand in recess until 12.